UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MALIBU BOATS, LLC, | ) |
|     Plaintiff and Counter-Defendant, | ) ) ) |
| v. | )     No.: 3:15-CV-276-TAV-HBG |
| MASTERCRAFT BOAT COMPANY, LLC, | ) ) ) |
|     Defendant and Counter-Claimant. | ) |

### MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendant and counter-plaintiff MasterCraft's Motion for Summary Judgment of Noninfringement [Doc. 23]. MasterCraft moves the Court for summary judgment that it does not infringe, and has not infringed, any claim of plaintiff and counter-defendant Malibu Boats, LLC's U.S. Patent No. 8,578,873 ("the '873 patent"). Malibu filed a response in opposition [Doc. 30], MasterCraft replied [Doc. 33], and Malibu filed a sur-reply [Doc. 38]. After careful consideration of the facts and relevant law, the Court will deny the motion for summary judgment.[1]

**I. Background**

The '873 patent relates to a surf-wake system for modifying a wake produced by a watercraft travelling through water [Doc. 27-1]. At issue in the motion for summary

---

[1] Each party requested a hearing on the motion for summary judgment. The Court considers requests for oral argument on a case-by-case basis, and upon review of the record, the Court finds that oral argument is not needed. Thus, the requests for oral argument are **DENIED** [Docs. 30, 39].

judgment is the requirement in the '873 patent for upright water diverters or wake modifiers. MasterCraft asserts that there is no genuine issue of material fact that MasterCraft's accused Gen 2 and NXT Surf Systems do not have "upright" water diverters or wake modifiers as required by all of the claims of the '873 patent [Doc. 23].

### A. Malibu's '873 Patent

In or around 2013, Malibu invented a surf system that utilizes two upright water-diverting structures at the stern of the boat, one for water flowing along the port side of the boat and one for water flowing along the starboard side of the boat, to generate surfable wakes [Doc. 27-1; Doc. 1 ¶ 13]. By extending one of the water diverters, waves are forced to converge behind the boat asymmetrically, enhancing the size, shape, and/or other characteristics of the resulting wake of the boat [*Id.*]. More specifically, they "allow[] diversion of water passing along one side of the stern away from the usual converging area immediately behind the transom of the watercraft, so that the diverging water will enhance the resulting wake on the opposing side of the watercraft" [*Id.*]. This invention was awarded several patents, including the '873 patent, and the commercial implementation of the surf system is known as Surf Gate [Doc. 30 p. 5]. The following image depicts Surf Gate on one of Malibu's boats:

2



### B. MasterCraft

In 2009, MasterCraft introduced Surf Tabs, which were a pair of trim tabs pivotally attached along the bottom of the transom, one on the port side and one on the starboard side [Doc. 26 ¶¶ 8–10]. Each Surf Tab pivoted between a raised, non-deployed position and a lowered, deployed position [*Id.* ¶ 10]. The trim tabs included an "upwardly-extending portion," which "extend[ed] approximately ¼ inch above the upper surface of the flat portion of the tabs" [Docs. 31-1, 32-2]. The following image depicts the Surf Tabs on a MasterCraft boat:



3

[Doc. 24 p. 8].

With the Surf Tabs, as a boat moves through the water, the water flowing under the hull bottom impinges on the deployed tab, creating an upward force on the tab [Doc. 26 ¶ 11]. As a result, the portion of the boat where the tab is attached is raised [*Id.*]. To enhance the wake of the boat for wake surfing, the operator of the boat must deploy either the port or starboard tab [*Id.*]. When a tab is deployed, that side of the boat is raised and the other side is lowered, and the side of the boat with the enhanced wake is the surf side [*Id.*].

In late 2013, MasterCraft introduced its next-generation surf system, Gen 2, which builds upon the same basic concepts utilized by MasterCraft's Surf Tabs [*Id.* ¶¶ 7, 13]. The Gen 2 Surf System has port and starboard wake-shaping devices ("WSDs"), which are pivotally attached along the bottom of the transom at an inclination MasterCraft asserts is closer to horizontal than vertical [*Id.* ¶¶ 21, 23]. More particularly, MasterCraft asserts that the inclination varies from a minimum of about 10° above horizontal for the X-Star model boat to a maximum of about 27° degrees above horizontal for the X55 model boat [*Id.* ¶ 23]. The following images depict the wake-shaping devices on the X-Star and X55, respectively:

 

[Doc. 24 p. 10]. When the operator of the boat deploys one side, the boat leans to the non-deployed side [Doc. 26 ¶ 17; Doc. 26-23]. Like with the Surf Tabs, the port wake-shaping device is deployed in order to enhance the starboard surf wake, and the starboard wake-shaping device is deployed in order to enhance the port surf wake [Doc. 26 ¶ 16].

MasterCraft adapted the Gen 2 Surf System for its line of NXT boats, which were first introduced in 2014 [*Id.* ¶ 13]. It is undisputed that the NXT Surf System is no different than the Gen 2 Surf System [*Id.*; Doc. 30 p. 6].

According to MasterCraft, Malibu previously referred to Gen 2 as "glorified trim tabs" that create lift and lean, not delayed convergence like Surf Gate [Doc. 27-11]. It also called Surf Gate "completely different" from MasterCraft's "trim tab" approach [Doc. 27-10].

Malibu contends that the Surf Systems differ from the Surf Tabs because they include what MasterCraft calls "upturned surfaces" and "downturned surfaces" [Docs. 31-1, 31-2]. The angle between the upturned surfaces and the central portion of the plate-like member is "preferably [] between 30° and 150°, and more preferably is about 90°,"

5

and they extend at least one inch above the upper surface of the plate-like member but "more preferably" about two inches above that surface, and "even more preferably" about two and a half inches above that surface [*Id.*]. Malibu claims these the upturned and downturned surfaces serve to "delay the water" and "shift the point of convergence," thereby helping achieve the goal of generating "larger wakes with improved shapes" [*Id.*]. The following images depict close-up views of the Gen 2 wake-shaping devices with these turned surfaces:

 

[Docs. 31-4, 31-5].

    C.    *Malibu Boats, LLC v. Nautique Boat Company, Inc.*

Malibu previously asserted that Nautique Boat Company, Inc. ("Nautique") infringed upon the '873 patent in Case No. 3:13-CV-656-TAV-HBG before this Court. While the case ultimately settled, the Court construed several claim terms of the '873 patent. Relevant here, the Court construed the claim term "upright" to mean "oriented generally vertically with respect to the boat, allowing for slight inclination." *Malibu*

6

*Boats, LLC v. Nautique Boat Co.*, No. 3:13-CV-656-TAV-HBG, — F. Supp. 3d —, 2015 WL 4747878, at *10–11 (E.D. Tenn. Jan. 28, 2015). The term upright appears in each independent claim of the '873 patent. And while the Court also determined that "[t]he incline of each water diverter is determined by its pivot axis," *id.* at *10, the Court did not construe the terms "water diverter" and "wake modifier."

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). The plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[M]ere conclusory and unsupported allegations, rooted

7

Case 3:15-cv-00276-TAV-HBG   Document 45   Filed 02/11/16   Page 7 of 14   PageID #: 1677

in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quotations and citation omitted). Summary judgment may not be defeated "based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Hein*, 232 F.3d at 488.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Analysis

MasterCraft asserts that there is no genuine issue of material fact that MasterCraft's Surf Systems do not have "upright water diverters" or "upright wake

8

modifiers" as required by all the claims of the '873 patent [Doc. 23].  In support of this assertion, it highlights that its Surf Systems include wake-shaping devices that are pivotally attached to the transom of the boat at an inclination much closer to horizontal than to vertical.

There are two inquiries in determining a claim of infringement.  The first is construing the claims, which is "a question of law in which the scope of the asserted claims is defined."  *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (2000) (citation omitted).  The second is comparing the "claims, as construed," to the accused device, which is a question of fact.  *Id.*  "To prevail, the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents."  *Id.*

During the course of the briefing on the motion for summary judgment, the parties began disputing whether the wake-shaping devices as a whole should be examined as upright or whether portions of the wake-shaping devices—specifically the upturned and downturned surfaces—should be examined as upright.  The claim term "upright" describes the claim terms "water diverter" and "wake modifier."  While the Court construed the term "upright" in *Nautique*, it did not construe "water diverter" or "wake modifier," and construction of these terms must occur so that the Court can determine whether it should examine the wake-shaping devices as a whole or portions of the wake-shaping devices—specifically the upturned and downturned surfaces—in its infringement analysis.  In other words, claim construction will clarify whether portions of the wake-

9

shaping devices are "water diverters" or "wake modifiers."  As this is a major point of contention between the parties, MasterCraft's request for summary judgment on literal infringement and infringement under the doctrine of equivalents is premature.  *See Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*, No. 06-1477, 2008 WL 1847701, at *1 (W.D. Pa. Apr. 23, 2008) (noting that "[p]lacing the Defendant's summary judgment arguments ahead of claims construction is of little utility, and would create the potential for unnecessary adjudicative risk"); *Nesscap Co., Ltd. v. Maxwell Techs., Inc.*, No. 07CV704 JLS (BLM), 2007 WL 4277548, at *6 (S.D. Cal. Dec. 5, 2007) (denying pre-claim construction motion for summary judgment as "premature").

That leaves the Court with MasterCraft's request for summary judgment regarding indirect infringement under 25 U.S.C. § 271(b), (c), or (f).  Malibu asserts that MasterCraft indirectly infringes under these statues by inducing its customers and potential customers to use MasterCraft's Surf Systems in an infringing manner and by selling non-staple components that are thereafter combined with other components to form an infringing combination [Doc. 1 ¶¶ 22–24].  MasterCraft argues that summary judgment is appropriate because its wake-shaping devices have never been installed at an inclination of more than 27° relative to horizontal [Doc. ¶ 26].  Further, it argues that even if someone installed MasterCraft's wake-shaping devices in an upright orientation, MasterCraft never induced anyone to do so and MasterCraft's intended, non-upright orientation of the wake-shaping devices is a substantial noninfringing use for them [*Id.* ¶¶ 25–26].  Malibu counters that, even assuming the turned surfaces can be ignored in the

10

analysis of infringement, there are disputed issues of fact that preclude summary judgment, and it asks for time to conduct discovery pursuant to Rule 56(d) [Doc. 30].

When a summary judgment motion is filed, the party opposing the motion may, by affidavit under Rule 56(d) (formerly Rule 56(f)), explain why he or she is unable to present facts essential to justify the party's opposition to the motion. Fed. R. Civ. P. 56(d). The Rule provides in pertinent part:

> **(d)  When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its position, the court may:
>
> (1)  defer considering the motion or deny it;
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
> (3)  issue any other appropriate order.

Fed. R. Civ. P. 56(d). The party seeking the additional discovery bears the burden of "demonstrat[ing] why such discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Bare allegations or vague assertions of the need for additional time for discovery are not enough. *United States v. Cantrell*, 92 F. Supp. 2d 704, 717 (S.D. Ohio 2000) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998)). The Sixth Circuit has found that a party must make such a request with "some precision" and must state "the materials he hopes to obtain with further discovery and exactly how he expects those materials would help him in opposing summary judgment." *Summers*, 368 F.3d at 887 (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)); *see also Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir.

11

2000) (noting that a party making a filing under Rule 56(f) must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information" (citation omitted)).

In his affidavit, David S. Almeling, attorney of record for Malibu, outlines the discovery needed to oppose MasterCraft's motion for summary judgment [Doc. 31]. In particular, he notes that discovery is needed regarding: (1) "[m]easurements and other information concerning the angles between the upturned surfaces of the MasterCraft WSDs and the boats upon which the WSDs are installed, and/or between the upturned surfaces of the WSDs and the horizontal and/or vertical axes"; (2) "[i]nstallations of standalone MasterCraft Surf Systems by MasterCraft dealers or others" and the type of investigation MasterCraft performed to declare that it is not aware of any instance in which a MasterCraft Surf System was installed at an inclination of more than about 27° from horizontal; (3) "[c]ommunications between MasterCraft and its dealers or others regarding the installation of the MasterCraft Surf Systems"; (4) "[i]nformation about possibly infringing operation of the MasterCraft Surf Systems by others, and MasterCraft's knowledge or willful ignorance of same"; (5) "[i]nformation about the design, installation, and operation of the MasterCraft Surf Systems"; and (6) "[i]nformation about MasterCraft's prosecution of its patents on the MasterCraft Surf Systems" [*Id.* ¶ 9]. Mr. Almeling also discusses the forms of discovery that would be utilized to obtain this information, including inspection of the Surf Systems, document requests, interrogatories, depositions, and expert discovery [*Id.* ¶ 10].

The Court finds that Malibu has demonstrated a need for additional discovery prior to the Court's determination of the defendant's motion on the issue of indirect infringement, particularly given that discovery had not commenced when MasterCraft filed its motion. In reaching this determination, the Court notes the five factors the Sixth Circuit has instructed district courts to consider when ruling on a Rule 56(d) motion:

> (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the non-moving party was responsive to discovery requests.

*HCA-Info. Tech. & Servs., Inc. v. Informatica Corp.*, No. 3:10-CV-01155, 2011 WL 5117727, at *2 (M.D. Tenn. Oct. 25, 2011) (citing *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)). Because discovery had not yet commenced when MasterCraft filed its motion for summary judgment, many of these factors weigh in favor of granting the Rule 56(d) motion. *See Thomason v. Amalgamated Local No. 863*, 438 F. App'x 358, 361 (6th Cir. 2011) (noting that where no discovery has taken place, the first and third factors weigh in favor or the party seeking relief and the fourth factor is inapplicable). Yet, MasterCraft claims the desired discovery would not change the ruling because Malibu merely speculates "that some rogue dealer or customer may have installed the WSDs 'in a more vertical orientation' than what MasterCraft instructs" and MasterCraft instructs its dealers to install the wake-shaping devices in the same manner that MasterCraft installs them [Doc. 33 p. 19]. While this may ultimately be true, the Court is inclined to allow discovery so that the parties may develop the relevant facts.

13

*See Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1337 n.3 (Fed. Cir. 2008) (noting that it is the "prevailing rule in all circuits" that summary judgment is inappropriate until there is an adequate opportunity to conduct discovery, including in the Sixth Circuit).

**IV.  Conclusion**

For the reasons discussed herein, the Court concludes that MasterCraft's motion for summary judgment is premature.  Thus, MasterCraft's Motion for Summary Judgment of Noninfringement [Doc. 23] is hereby **DENIED** without prejudice. MasterCraft may re-file a motion for summary judgment prior to the expiration of the dispositive motion deadline, as set forth in the Scheduling Order [Doc. 40].

In addition, in light of the Court's decision herein, this matter is hereby **REFERRED** to the magistrate judge for consideration of a briefing schedule related to claims construction.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE